**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **DEAMPRET LEON MILLER,** ) <br> **#17133-002,** ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> **UNITED STATES OF AMERICA,** ) <br> ) <br> Respondent. ) | Case No. 1:21-cv-748-RAH-CWB |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Deampret Leon Miller, a federal inmate, has filed a motion under 28 U.S.C. § 2255 to challenge his judgment of conviction in *United States v. Miller*, 1:17-cr-11-WKW-SRW.[1] (Doc. 8 at p. 1). For the following reasons, the Magistrate Judge recommends that Miller's § 2255 motion be denied without an evidentiary hearing and that this action be dismissed with prejudice. *See* Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*.

**I.  Criminal Proceedings**

On January 11, 2017, a grand jury in the Middle District of Alabama returned a one-count indictment against Miller.[2] (Cr. No. 1). The indictment alleged that Miller, having been convicted previously of multiple felonies, knowingly possessed a Rossi .22 and .410 combination caliber rifle and ammunition in violation of 18 U.S.C. §§ 922(g)(1) & 924(e). (Cr. No. 1 at pp. 1-2). At his arraignment on February 24, 2017, Miller pled not guilty. (Cr. No. 13). On March 1, 2017, Federal Defender Cecilia Vaca filed a notice of appearance on Miller's behalf. (Cr. No. 15).

---

[1] All citations to the underlying criminal action will be denoted as (Cr. No.).

[2] The grand jury later returned a superseding indictment that did not contain any additional charges. (Cr. No. 123).

1

Ms. Vaca filed a notice of insanity defense on May 23, 2017 (Cr. No. 23), and the Government moved to have Miller examined regarding his competency to stand trial (Cr. No. 26). The request was granted by the court. (Cr. No. 32). Following that examination, the presiding District Judge held a competency hearing on December 12, 2017—at which time he concluded that Miller indeed was incompetent to stand trial. (Cr. No. 49). Miller's competency was restored approximately one year later on December 20, 2018. (Cr. No. 78).

On April 30, 2019, Ms. Vaca filed a motion seeking to suppress all statements Miller made to law enforcement.[3] (Doc. 14-2; Cr. No. 98). The motion asserted that such statements were tainted by an unknowing and involuntary waiver of Fifth Amendment and *Miranda* rights due to Miller's "untreated mental illness, Mild Intellectual Disability, [and] cognitive impairment." (*Id*.). The Magistrate Judge held an evidentiary hearing and issued a Report and Recommendation (Doc. 15-1; Cr. No. 147), which was adopted by the District Judge, to grant the motion to suppress (Cr. No. 159).

Following a jury trial, Ms. Vaca made an oral motion on December 3, 2019 for Miller's acquittal, arguing that the Government had not sufficiently proven that the recovered ammunition traveled in interstate commerce or Miller's constructive possession of the firearm. (Doc. 14-13 at pp. 3-4). The District Judge orally denied the motion (*id*. at p. 13), and the jury found Miller guilty on the charge asserted in the indictment (Doc. 14-5 at p. 1; Cr. No. 170).

On March 10, 2020, Ms. Vaca filed a Motion for Downward Variance requesting that the court vary downward from the guideline sentencing range. (Doc. 14-4; Cr. No. 181). The motion was orally granted and, on March 11, 2020, Miller was sentenced to a term of

---

[3] At the suppression hearing, Richard Nieto—a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives—testified that Miller stated he was aware there was a rifle in his home, his cousin had left it there, and he would have touched it and moved it. (Cr. No. 147 at p. 8).

2

imprisonment of 180 months. (Doc. 14-5 at p. 2; Cr. No. 183 at p. 2). On April 24, 2020, Ms. Vaca withdrew as counsel and CJA Panel Attorney Thomas Goggans was appointed to represent Miller for all further proceedings, including appeal. (Doc. 14-6; Cr. No. 189).

That same day, Mr. Goggans filed a Notice of Appeal on behalf of Miller. (Doc. 14-7; Cr. No. 191). Mr. Goggans argued that Miller's 180-month sentence was not substantively reasonable because the district court (1) declined to adjust the applicable statutory minimum by the amount of time Miller served on a sentence for a related state conviction, and (2) failed to consider the delays in proceedings caused by Miller's mental health issues. (Doc. 14-8 at p. 3; Cr. No. 224 at p. 1). On February 25, 2021, the Eleventh Circuit issued a per curiam opinion dismissing in part and affirming in part the judgment of conviction. (*Id.* at p. 9; Cr. No. 224). Final judgment was entered on March 26, 2021. (Doc. 14-9; Cr. No. 225).

## II.  Miller's § 2255 Motion

Miller, acting *pro se*, timely filed the instant motion under 28 U.S.C. § 2255.[4] (Doc. 2). On December 28, 2021, he filed an amended § 2255 motion and asserted the following claims:

1. that his trial counsel rendered ineffective assistance by failing to "ask[] for the case to be dismissed as there was, and is, no evidence that the gun was [his]" (Doc. 8 at p. 15);

2. that his trial counsel rendered ineffective assistance by failing to ask his landlord questions pertaining to "when [he] moved out, why etc." (*id*. at p. 16);

3. that his trial counsel rendered ineffective assistance by failing to call "a single witness that [he] had given her to prove it was not [his] gun" (*id*.);

---

[4] Miller previously filed a § 2255 motion in *Miller v. United States*, 1:20-cv-194-WKW-SRW, which was dismissed without prejudice because it was filed while his direct appeal was still pending in the Eleventh Circuit. (*See* Doc. 1 at p. 1). After his direct appeal concluded, Miller filed a motion to amend the dismissed § 2255 motion. (*Id*.). The court denied the motion to amend and instead directed the clerk to open a new civil action. (*Id*.).

3

    4. that his trial counsel rendered ineffective assistance because, when he told her he did not have his medication, "she said she would try to get them here but they never arrived before [he] went to trial" (*id.* at p. 17); and

    5. that his appellate counsel rendered ineffective assistance by failing to raise his ineffective assistance claims on appeal (*id.* at p. 18).[5]

On January 31, 2022, the Government filed a response in opposition to the § 2255 motion (Doc. 14) with accompanying exhibits. Miller then filed a motion for leave to amend (Doc. 19), which the court granted, and asserted a new ineffective assistance of counsel claim (*see* Docs. 21 & 22):

    6. that trial counsel rendered ineffective assistance by failing to investigate a video used to obtain a search warrant for Miller's residence (Doc. 21 at pp. 6-7).

On July 7, 2022, the Government filed a response in opposition to the amendment (Doc. 23) and, on September 22, 2022, Miller filed a reply (Doc. 27).

Finally, on or around July 5, 2024, Miller filed another motion for leave to amend (Doc. 29) in which he sought to assert additional claims that his trial counsel was ineffective for failing to (1) present an insanity defense, (2) call witnesses on his behalf—specifically, "the owner [of the trailer] as well as individuals that provided transportation to the dwelling" for him to clean out his belongings, (3) challenge prior offenses used to enhance his sentence as an armed career criminal, and (4) argue that his conviction violated *Rehaif v. United States*, 588 U.S. 225 (2019). The court subsequently determined that only Miller's claim that counsel was ineffective for failing

---

[5] Although "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice," ineffective assistance of counsel claims are exempt from the general procedural default rule. *See Massaro v. United States*, 538 U.S. 500 (2003) (noting that a § 2255 motion is preferable to direct appeal for deciding claims of ineffective assistance of counsel and holding that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255").

to call witnesses about the firearm possession related back to a claim timely asserted in his § 2255 motion (*see* Doc. 8 at p. 16) and, thus, that the remaining claims were time-barred under the one-year limitation period in § 2255(f)(1) (*see* Doc. 31 at p. 2). On August 8, 2024, the Government filed a substantive response in opposition, arguing that Miller's amended claim lacked merit. (Doc. 32). On or around December 22, 2024, Miller filed a final reply. (Doc. 39).

### III. Discussion

#### A. General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited. A prisoner may have relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

#### B. Ineffective Assistance of Counsel Claims

A claim of ineffective assistance of counsel is evaluated under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). An attorney is considered constitutionally ineffective if (1) his or her "performance was deficient" and (2) the "deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687; *see also Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

"In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also C/handler*, 218 F.3d at 1315 ("[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."); *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) ("Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it."). Scrutiny of counsel's performance is highly deferential, and the court indulges a strong presumption that counsel's performance was reasonable. *See Chandler*, 218 F.3d at 1314 (citations omitted).

Under the prejudice component, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. However, the prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the results of the proceeding fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.").

Unless a petitioner satisfies both prongs of the *Strickland* test, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has. *Id*. at 697; *see also Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  To establish ineffective assistance of appellate counsel, a movant must demonstrate "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. [] Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted).

### 1. Trial counsel was not ineffective for failing to seek dismissal based on lack of evidence.

First, Miller argues that Ms. Vaca "should have asked for the case to be dismissed as there was, and is, no evidence that the gun was [his]." (*Id.*).  He elaborates that "since the only evidence [the Government] had was a statement that was suppressed, [Ms. Vaca] should have asked for a dismissal." (Doc. 21 at p. 2).  A review of the trial record, however, reveals that Miller is incorrect on both fronts—the Government presented sufficient evidence to permit a jury to find him guilty of possessing a firearm and, notwithstanding, Ms. Vaca thereafter did seek a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure on the basis of insufficient evidence.

"To support a conviction under 18 U.S.C. § 922(g)(1), the government must establish that: (1) the defendant knowingly possessed a firearm or ammunition; (2) the defendant was previously convicted of an offense punishable by a term of imprisonment exceeding one year; and (3) the firearm or ammunition was in or affecting interstate commerce." *United States v. Jones*, 284 F. App'x 771, 772 (11th Cir. 2008) (citation omitted). "Possession may be actual or constructive, joint or sole." *Jones*, 284 F. App'x at 772 (quoting *United States v. Gunn*, 369 F.3d 1229, 1234 (11th Cir. 2004)).  "To establish constructive possession, evidence must demonstrate that the defendant exercised ownership, dominion, or control over the firearm or ammunition, or the <u>property</u> concealing the firearm or ammunition." *Id*. (emphasis added).

7

Stephen Thompson, a special agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") testified at trial that, at the time the search warrant was executed, Miller resided in the trailer (Doc. 14-12 at p. 5), that Miller opened the front door to the trailer (*id.* at pp. 7, 26-27), that no one else was present in the trailer (*id.* at pp. 8, 24), that a gun rack containing a firearm was found on the wall of the trailer (*id.*), that ammunition fitting the firearm was found sitting on a table (*id.* at p. 16), that ammunition of a different type was found "on top of a cabinet in the kitchen area" (*id.* at p. 17), that a firearm magazine was found in a cabinet (*id.* at p. 19), that mail addressed to Miller was found in the residence (*id.* at pp. 19-21), and that additional ammunition fitting the firearm was found in a structure in the backyard of the residence (*id.* at pp. 21-22). ATF Agent Richie Carpenter testified that the recovered firearm and ammunition traveled in interstate commerce based on the locations in which they were, or likely were, manufactured. (*Id.* at pp. 54, 56, 59, 60). And Miller's landlord, Michal Hooks, testified to the following:

- that he rented the trailer to Miller from mid-2015 "[p]robably until after the incident" at issue (Doc. 14-12 at p. 38);

- that he met Miller outside the trailer every month to collect rent (*id.* at pp. 38-40);

- that there was no gun rack installed or mounted in the trailer at the time he began renting the trailer to Miller (*id.* at p. 41);

- that the firearm was not in the trailer at the time Miller began renting (*id.*);

- that the firearm did not belong to him, *i.e.*, Mr. Hooks (*id.* at pp. 41-42); and

- that as far as he knew Miller was the only person living in the trailer during the rental period (*id.* at p. 42).

Such testimony was sufficient for a jury to have reasonably concluded beyond a reasonable doubt that Miller, a convicted felon, had dominion or control over the firearm and that the firearm was in or affecting interstate commerce. *See United States v. Williams*, 708 F. App'x 570, 571 (11th Cir. 2017).  To the extent Miller insinuates that someone else may have put the firearm and ammunition in the trailer without his knowledge, the fact that others may have had access to the trailer did not preclude a jury from finding that Miller had constructive possession. "Constructive possession need not be exclusive … and can be proven circumstantially by ownership, dominion, or control over the premises [in] which the [item] is located." *United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989) (explaining that although defendant did not have exclusive control over her house, several other individuals lived there, and defendant had returned from a trip only minutes before the execution of the search warrant, the facts were sufficient for a jury to find that she constructively possessed cocaine found in the house because she owned and exercised dominion and control over the house); *United States v. Montes-Cardenas*, 746 F.2d 771, 778 (11th Cir. 1984) ("Constructive possession may be shared with others, and can be established by circumstantial or direct evidence."); *accord United States v. Marx*, 635 F.2d 436, 440 (5th Cir. 1981); *see also United States v. Faust*, 456 F.3d 1342, 1346 (11th Cir. 2006) (holding that evidence was sufficient to show the defendant had constructive possession of cocaine in apartment even though his wife also lived there and was the sole signatory on the renewal lease). Indeed, it is not enough for Miller to put forth a reasonable hypothesis of innocence, because the issue is not whether a jury reasonably could have acquitted; it is whether a jury reasonably could have found guilt beyond a reasonable doubt based on the evidence presented.  *United States v. Martin*, 803 F.3d 581, 587 (11th Cir. 2015).  For the reasons explained above, it could.

9

Moreover, after all evidence was presented at trial and the government rested, Ms. Vaca made an oral motion for judgment of acquittal, arguing that the Government had not sufficiently proven that the recovered ammunition traveled in interstate commerce or Miller's constructive possession of the firearm (Doc. 14-13 at pp. 3-4):

> I am moving for acquittal under Rule 29. The indictment charges that Mr. Miller was in possession of a firearm, the Rossi rifle, and ammunition. I'll start with the ammunition.
>
> As far as the ammunition, I don't believe that the government has proven the interstate nexus on those items. Richie Carpenter testified that he did not examine those. They were not -- the ammunition, they were not given to him for examination. He did not create a report on that.
>
> They had him come in and testify what his training is and the appropriate mechanisms by which he determines that there is a nexus; that he needs to look it up and examine the actual ammunition and determine -- and do his research that he spent all this time learning how to do before he can make a finding of a nexus under the ATF training. That's what the appropriate procedures are, and that's what he testified to.
>
> He saw that ammunition -- I don't know if it was for the first time, Your Honor, but he did not examine it. He did not create a report. So as far as an interstate nexus on the ammunition, I would state that that is not present and that that should not go to the jury on the ammunition.
>
> On the gun, Your Honor, the government, I assume, is arguing a constructive possession case in this case. They have offered I guess the fact that Mr. Miller was present at the residence or opened the door the day of the search warrant, but there's been no other indication that they have observed or had any investigation as to who else lives there. And the landlord, Mikey Hooks, he testified that he was unaware of whether there was anyone there or not. He didn't have any prohibition against him having a roommate. And for those reasons, Your Honor, I would say that the government isn't here to prove possession of a -- constructive possession of a residence. They're here to prove the constructive possession of the firearm. So that's my motion.

(*Id*. at p. 4). Given that Ms. Vaca did challenge the sufficiency of the Government's evidence at trial, and given that the challenge was denied by the District Judge, Miller cannot satisfy either the deficient performance or prejudice prong of the *Strickland* test.

### 2. Trial counsel was not ineffective for failing to further question Miller's landlord.

Second, Miller argues that Ms. Vaca should have questioned his landlord about "when [he] moved out, why etc." (Doc. 8 at p. 16). Miller states that he was forced to move out after the water was disconnected on November 27, 2015 (*id.* at p. 13):

> I told [Mr. Hooks] that I could not live there with no water and I moved in with friends and stayed in hotels until I could get myself situated. Some of my belongings remained in the trailer and [Mr. Hooks] said it was ok to leave them there until I found somewhere else. My rental payments of $375 per month became a storage fee of $200 a month. From November 2015 I did not live at the property, neither did I visit it, until I got a call from [Mr. Hook's] mom asking if I had found somewhere to live and could move my stuff from the trailer as they were going to renovate it and re-rent it.

(*Id.* at pp. 13-14).

> My entire point there is that there was no lease for me with [Mr. Hooks]. When the water was turned off I could not stay there and I moved. Like [Mr. Hooks], I couldn't tell you who was there, when; who had the gun; where the gun rack cam[e] from; where the ammunition came from etc.

(Doc. 21 at p. 3).

On cross-examination, Ms. Vaca questioned Mr. Hooks regarding the imprecise timeframe in which Miller rented the trailer, the lack of a written lease between Miller and Mr. Hooks, whether anyone else was present when Mr. Hooks collected rent (Mr. Hooks testified that only he and Miller were present), and whether there was an agreement that would prohibit Miller from having guests or other people stay at the trailer (Mr. Hooks testified that they did not have any such agreement). (Doc. 14-12 at pp. 42-43). Ms. Vaca further asked, "So you have no personal knowledge of who may have been in the residence when you weren't there?" and Mr. Hooks responded, "No, ma'am." (*Id.* at p. 45). On redirect, the Government asked Mr. Hooks when Miller moved out from the trailer, and Mr. Hooks stated, "He was still there until, you know, the incident. That's when we had to clean up and everything, get everything out." (*Id.* at p. 46).

11

The record thus demonstrates that Ms. Vaca did in fact question Mr. Hooks about the uncertainty of the dates during which Miller rented the trailer and the fact that Mr. Hooks could not guarantee that no individuals other than Miller were in the trailer during that time. To the extent Miller believes Ms. Vaca should have questioned Mr. Hooks further, her failure to do so did not prejudice Miller. As explained above, Mr. Hooks' testimony that he rented the trailer to Miller throughout the relevant period and that he did not know of anyone else living in the trailer was sufficient to establish Miller's dominion and control over the trailer. Even if Miller did not actually stay in the trailer after November 2015, he admits in his § 2255 motion that he continued to pay a "storage fee" of $200 a month and that his belongings remained in the trailer until the day the search warrant was executed. (Doc. 8 at pp. 13-14). And Mr. Hooks testified that, although he and Miller did not have an explicit agreement that would prohibit Miller from having guests or other people stay at the trailer, as far as he knew Miller was the only person living in the trailer. (Doc. 14-12 at p. 42). It therefore was not unreasonable for a jury to conclude that Miller had dominion and control over the trailer during the relevant period. The fact that others may <u>also</u> have had access to the trailer would not preclude such a finding. *See Poole*, 878 F.2d at 1392 ("Constructive possession need not be exclusive[.]"). So again, Miller can satisfy neither the deficient performance nor the prejudice prong of *Strickland*.

      **3.**    **Trial counsel was not ineffective for failing to call particular witnesses.**

Third, Miller argues that Ms. Vaca should have called various witnesses to help his case (Doc. 8 at p. 16):

> Paul Brady, Bruce Brady – these are people who drove me back and forth to hotels or let me stray (sic) with them and drove me there on the morning of the arrest. There is evidence at the Hotel's that I stayed at.[]

12

> Showing that I didn't live there for the two months because the water was off would "contradict or minimize the Government's evidence" and, alone, may have given the Jury reasonable doubt.

(Doc. 21 at pp. 3-4).

The decision whether to call a witness is committed to the sound discretion of trial counsel "and it is one that we will seldom, if ever, second guess" in a § 2255 review. *Shaw v. United States*, 729 F. App'x 757, 759 (11th Cir. 2018). "Ineffective assistance claims based on 'complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because all allegations of what a witness would have testified are largely speculative.'" *Chaney v. Sec'y, Fla. Dep't of Corr.*, 447 F. App'x 68 (11th Cir. 2011) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). "'Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision' that seldom, if ever, serves as grounds to find counsel's assistance ineffective." *Id.* (quoting *Conklin v. Schofield*, 366 F.3d 1191, 1204 (11th Cir. 2004)). Here, it cannot be said to be plainly unreasonable for Ms. Vaca to have made an informed, strategic determination not to call certain witnesses whose <u>potential</u> testimony still would not have been sufficient to preclude a jury from reasonably concluding that Miller had constructive possession of the firearms and ammunition found in the trailer. *See Strickland*, 466 U.S. at 688 ("In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."); *Chandler*, 218 F.3d at 1315; *Adams*, 709 F.2d at 1445. Accordingly, Miller has not established either deficient performance or prejudice.

> **4.  Trial counsel was not ineffective for failing to ensure Miller's medication arrived prior to trial.**

Fourth, Miller argues that Ms. Vaca should have ensured that he received his medication prior to trial (Doc. 8 at p. 17):

13

> My lawyer told me that I MUST continue to take my medication in order to stay competent for trial. When I told her that when I was trasnferred (sic) they gave me someone else's medication she said "they" would get mine. But "they" never did and noone (sic) checked. Without my meds I was not focused enough to remind her to check – but she shouldn't have needed reminding since she's the one that knew I needed it to stay competent.

(Doc. 21 at p. 5).

To the extent Miller argues that he was incompetent to stand trial without his medication and that Ms. Vaca was ineffective by failing to either ensure his competence or request another competency hearing, the argument fails. "Incompetency means 'suffering from a mental disease or defect rendering [a defendant] mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Battle v. United States*, 419 F.3d 1292, 1298 (11th Cir. 2005) (quoting 18 U.S.C. § 4241(a)). To show entitlement to an evidentiary hearing on a competency claim, a petitioner must present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Johnston v. Singletary*, 162 F.3d 630, 637 (11th Cir. 1998) (quoting *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995)). "This standard of proof is high; and 'the facts must positively, unequivocally, and clearly generate the legitimate doubt.'" *Battle*, 419 F.3d at 1299 (quoting *Medina*, 59 F.3d at 1106). The petitioner must prove by a preponderance of the evidence that he was in fact incompetent to stand trial. *Johnston*, 162 F.3d at 637 n.7; *see also Battle*, 419 F.3d at 1298-99; *Medina*, 59 F.3d at 1106.

Miller has not provided sufficient evidence that he was incapable of either understanding the nature and consequences of the proceedings against him or consulting with counsel to assist in his defense. *See Battle*, 419 F.3d at 1298; *see also Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 480-81 (11th Cir. 2012). Miller likewise has not demonstrated a reasonable probability that he would have received a competency hearing and been found incompetent had

14

counsel requested the hearing. *See Lawrence*, 700 F.3d at 479. Instead, he states vaguely that he "was deprived of [his] medication, which made [him] competent to stand trial" (Doc. 8 at p. 16) and that he "was not focused enough" to remind his lawyer to help him retrieve his medication (Doc. 21 at p. 5). Miller's purported lack of focus, without more, does not establish that he was incompetent to stand trial. *Id*. at 482 (citing *Wright v. Sec'y for Dep't of Corr.*, 278 F.3d 1245, 1259 (11th Cir. 2002) ("Not every manifestation of mental illness demonstrates incompetence to stand trial; rather, the evidence must indicate a present inability to assist counsel or understand the charges.") and *Medina*, 59 F.3d at 1107 ("[N]either low intelligence, mental deficiency, nor bizarre, volatile, and irrational behavior can be equated with mental incompetence to stand trial.")).

Prior to trial, a competency hearing was conducted, at which time a forensic evaluation report and certificate of restoration of competency were entered into evidence without objection. (Cr. No. 78 at p. 2). Miller met with a forensic psychologist who deemed him competent to stand trial, and no evidence to contest competency was presented by either party. (*Id*.). Accordingly, the court found that Miller understood the nature and consequences of the proceedings against him and that he was able to assist properly in his defense. (*Id*.). At sentencing, Miller addressed the fact that he had not had his medication at trial and both the District Judge and Ms. Vaca acknowledged their awareness in that regard:

> THE COURT: … I think I ordered that you get your medication during the trial.
>
> THE DEFENDANT: Yes, sir. Yes.
>
> MS. VACA: Yes.
>
> THE DEFENDANT: And it just wasn't brought at the time.

(Doc. 15-3 at p. 19). However, the District Judge specifically noted that Ms. Vaca "[has] been very careful to see to it that you are competent to do what we're doing today and that you were

competent to go to trial and that you were competent to discuss a plea." (Doc. 15-3 at p. 28). In a sworn affidavit submitted in response to Miller's § 2255 motion, Ms. Vaca additionally stated as follows:

> From what I recall, Mr. Miller's medications were not brought with Mr. Miller from the Lee County Jail to Dothan for the first day of trial. I informed the Court about the situation and asked the Court to order the marshals to get Mr. Miller's medication. I did not stop the trial.

(Doc. 13 at p. 2).

The evidence establishes that Ms. Vaca and the District Judge were aware that Miller was without his medication on the first day of trial and took steps to retrieve the medication. There is no evidence that Miller's failure to take his medication rendered him incompetent to stand trial or that Ms. Vaca's informed decision to proceed with trial was unreasonable. *See Strickland*, 466 U.S. at 688; *Chandler*, 218 F.3d at 1315; *Adams*, 709 F.2d at 1445. Because the evidence does not positively, unequivocally, and clearly generate doubt as to his competence to stand trial, Miller has failed to prove by a preponderance of the evidence that he was incompetent.

### 5. Trial counsel was not ineffective for failing to investigate a video used to obtain a search warrant.

Fifth, Miller argues that Ms. Vaca should have investigated a video that he "believe[s] was used (or the information it alleges was used) to obtain the search warrant" (Doc. 21 at pp. 6-7):

> I have noticed some discrepancies [in the video] which I believe constitutes new evidence.
>
> (1) The incident report states that "on 1/12/2016" at approximately 12:07pm . . . investigators and ATF agents met with a Confidential and reliable informant". The informant was given $50.00 cash and directed to go to 99 Private Road, 1212 New Brockton, AL and purchase ½ gram of methamphetamine.

16

> (2) At approximately 12:37pm, the CI met up with the agents, saying they were unable to purchase any drugs. A video camera was used during the attempted purchase and "showed firearms inside at 99 Private Road 1212 . . . along with audio discussing the firearms". It is reported that I am the other person in the video with the CI.
>
> (3) The only person in the video who answered the door is only seen from the neck down – there is no face.
>
> (4) The camera keeps cutting out and coming back on again, quite a few times.
>
> (5) The video shows the person who answered the door to be a white male. I am African-American.
>
> (6) The ATF Agents stated that the CI was by himself when he was allegedly with me, but in the video when the CI gets in the truck, someone else is with him.
>
> (7) The video also shows a few individuals outside when the CI was leaving the residence.
>
> (8) Most damaging of all is, that the video has a date and time stamp. Attached, are two stills. Both show the date as "2016/01/13" and the time as "2:41:34". How is this possible? The official incident report CLEARLY says that the attempted buy which is when the video was taken, took place on "1/12/2016" at approximately "12:22" – "12:29pm".
>
> I believe that this, in itself, not only helps to prove my innocence but also helps prove that Counsel was ineffective by not investigating.

(*Id*.). Attached to Miller's response is an incident report from January 13, 2016, which in turn states:

> On 01/12/2016 at approximately 12:07 PM, 12th Judicial Drug Task Force Investigators and ATF Agents met with a confidential and reliable informant. The informant was given $50.00 cash to purchase ½ gram of methamphetamine/Ice from the target Deampret "Dee" Miller at 99 Private Road 1212, New Brockton, AL.[]
>
> The CI arrived at the residence at approximately 12:22 PM, and left the residence at approximately 12:29 PM. The CI met back with officers at approximately 12:37 PM.
>
> The CI was unable to purchase any methamphetamine/Ice because Miller was out.[] [V]ideo evidence gathered during this detail showed firearms inside 99 Private Road 1212, New Brockton AL along with audio discussing the firearms.

17

(Doc. 21-1 at p. 1).

Miller has not demonstrated how failure to investigate any of these purported discrepancies was unreasonable or resulted in prejudice. To the extent he believes Ms. Vaca was deficient by failing to challenge the search warrant based on lack of probable cause, he is incorrect. Whether Miller or another individual opened the door to the confidential informant, Miller does not assert— and there is no further evidence to support—that he was not present in the trailer or that it is not his voice on the audio discussing firearms with the confidential informant. Indeed, the investigation report does not state who answered the door and it does not state that Miller and the confidential informant were alone in the trailer when they discussed firearms. (*Id*. at p. 4). The report instead states in relevant part:

> CI of CCSO had previously been in MILLER's residence … for the purchase of illegal narcotics, and observed a firearm described to the CI as a 410 shotgun. The CI further stated he has seen MILLER in possession of a 40 caliber pistol at a different time.
>
> On Tuesday, January 12, 2016, the CI, equipped with audio/video recording devices, was sent to MILLER's residence[.] There the CI met with MILLER and, during this meeting, they discussed the 410 shotgun which was visible and present in the room with the CI and MILLER, as well as the 40 caliber pistol, which was not visible nor present in the room with the CI and MILLER.

(*Id*.). Those allegations—that the confidential informant personally saw two firearms in Miller's possession and discussed those firearms with Miller—coupled with the video evidence are sufficient to constitute probable cause for issuance of a search warrant. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983) (explaining that "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause") (citation omitted). Because there was probable cause to issue the search warrant, Ms. Vaca was not deficient by failing to file a meritless motion to suppress evidence obtained from the search. *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) ("Failing to make a meritless objection does not constitute deficient

18

performance.") (citing *Freeman v. Atty. Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim[.]")).

### 6. Appellate counsel was not ineffective for failing to raise the above claims on appeal.

Finally, Miller argues that appellate counsel was ineffective for failing to raise his ineffective assistance of counsel claims on appeal. (Doc. 8 at p. 18). Miller states that appellate counsel "should have, at a minimum, spoken to [him] regarding what [he] wanted to raise on appeal and had he done so, [he] would have raised everything [he is] raising in this 2255 motion." (Doc. 21 at p. 5). However, because Miller's ineffective assistance of counsel claims fail as to trial counsel, his claim as to appellate counsel necessarily fails under the prejudice prong of the *Strickland* test, *i.e.*, there is no reasonable probability that appellate counsel's failure to raise meritless claims changed the result of Miller's criminal proceeding or rendered that result unfair or unreliable. *See Strickland*, 466 U.S. at 694; *see also Denson*, 804 F.3d at 1342 (citing *Freeman*, 536 F.3d at 1233).

## IV. Conclusion

For the reasons stated above, it is the **RECOMMENDATION** of the Magistrate Judge that Miller's § 2255 motion be **DENIED** without an evidentiary hearing and that this case be **DISMISSED** with prejudice. *See, e.g., Dickson v. Wainwright*, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel.") (citation omitted).

It is **ORDERED** that all objections to this Recommendation must be filed no later than **March 13, 2025**. An objecting party must identify the specific portion(s) of factual findings/legal conclusions to which objection is made and must describe in detail the basis for each objection. Frivolous, conclusive, or general objections will not be considered.

After receiving objections, the District Judge will conduct a *de novo* review of the challenged findings and recommendations. The District Judge may accept, reject, or modify the Recommendation or may refer the matter back to the Magistrate Judge with instructions for further proceedings. *See* 28 U.S.C. § 636(b)(1)(C). A party shall be deemed to have waived the right to challenge on appeal a District Judge's order to the extent it is based upon unobjected-to findings or recommendations. The court on appeal may review unobjected-to factual and legal conclusions only for plain error if necessary in the interests of justice. *See* 11th Cir. R. 3-1.

No party may appeal this Recommendation directly to the United States Court of Appeals for the Eleventh Circuit. An appeal may be filed only as to an appealable order entered by the District Judge.

**DONE** this the 27th day of February 2025.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**